IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:18-cv-00591-RM-SKC

ERIC WOLFF,

    Plaintiff,

v.

UNITED AIRLINES, INC.

    Defendant.

---

**DISCOVERY ORDER RE: SPOLIATION**

---

This Discovery Order addresses a matter taken under advisement by this Court at the conclusion of a discovery hearing held on July 10, 2019. [#94.][1] Counsel for the Parties contacted chambers (consistent with this Court's civil practice standards) to alert the Court to various discovery disputes between them. They subsequently filed discovery briefs on July 8, 2019. [#92 (Defendant), and #93 (Plaintiff).] The Court then held oral argument on July 10, 2019. The Court understands the only remaining issues to be both party's spoliation claims that the Court took under advisement at the July 10 hearing.[2] [#94.]

---

[1] The Court uses "[#__]" to refer to specific docket entries in CM/ECF.
[2] It is the Court's understanding that Plaintiff's concerns regarding Defendant's claim of attorney-client privilege on certain emails and other documents were allayed during the July 10, 2019 hearing. To the extent the dispute still exists, the Court is satisfied by

1

In addition to taking the spoliation issues under advisement, the Court ordered Defendant to submit an affidavit from appropriate IT personnel to address three issues: (1) how Plaintiff's emails and text messages are stored by Defendant; (2) whether Defendant utilizes a cloud or servers to store emails; and (3) what it would take for Defendant to retrieve the emails and text messages at issue. [*Id.*] Defendant timely submitted two declarations on July 17, 2019. [#96.] After reviewing those declarations, the Court ordered Defendant to submit a supplemental declaration (1) describing its retention policy in place during 2017, and (2) stating when Plaintiff's company emails were removed from the server based on that retention policy. [#118.] Defendant timely submitted a supplemental declaration on September 11, 2019.[3] [#121.]

The Court has considered the Parties' briefs, oral argument, and declarations submitted by Defendant pursuant to the Court's orders. The Court has also reviewed applicable case law and other entries from the docket. The Court construes the matters under dispute as an oral Motion for Spoliation Sanctions by Plaintiff, and an oral Motion for Spoliation Sanctions by Defendant. The Court issues this Order to resolve these discovery disputes, as follows:

---

Defendant's explanation of the privilege log and reasons for claiming attorney-client privilege over certain redacted and withheld emails.

[3] The Court notes that the supplemental declaration does not directly answer the second part of the Court's order, *to wit*: when Plaintiff's company emails were removed from the server based on Defendant's retention policy. However, it appears the answer is inferred from the statement that an email would automatically delete "six months after it was created and/or sent." [#121-1 at ¶3.]

2

## A. FACTS RELEVANT TO THIS ORDER

The most salient facts to the spoliation issues are these: Defendant employed Plaintiff as an Airport Operations/Customer Service Supervisor at Denver International Airport for about 17 years. It terminated his employment on June 23, 2017 claiming he "repeatedly arrived late to work and left before his shift was over and failed to be a dependable and reliable employee." For example, Defendant alleges Plaintiff arrived late for work 12 times and left early 27 times between March 1 and June 7, 2017, alone.

Plaintiff sued alleging a discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, among other claims. [#70.] He claims that Defendant treated similarly situated female supervisors differently than him in connection with reporting to work and leaving early. According to Plaintiff, evidence critical to his claims no longer exists, to include: (1) his company cell phone which contained relevant emails and text messages; (2) his company (and perhaps other) computer from which he communicated by email during the workday; and, (3) handwritten notes and notebooks he kept of comparators (female employees not disciplined for lateness or early departures) in his desk or at his workstation.

Plaintiff cries "spoliation" because Defendant failed to preserve this evidence. He seeks "the sanction of judgment against the Defendant Corporation Pursuant to Fed. R. Civ. P. 37 and inherent authority of the Court for the Company's intentional spoliation of pivotal evidence." [#93 at p.1.] He argues that "judgment against the Defendant is appropriate because it destroyed pivotal evidence going to the heart of the case, erasing Plaintiff's company cell phone and company computers, and destroying critically

important notes and notebooks." [*Id.*] Not to be outdone, Defendant likewise cries "spoliation" because Plaintiff failed to preserve his personal cell phone.

### B. ANALYSIS

To obtain sanctions for spoliation of evidence, a party must first show that "(1) a party ha[d] a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007). "In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood that a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential adversary." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015). Ultimately, "a party's duty to preserve arises when it has notice that the [evidence] might be relevant to a reasonably-defined future litigation." *Id.*; *cf.* Fed. R. Civ. P. 37(e) advisory committee notes, 2015 amendment (preservation obligation does not apply when information or evidence is lost before a duty to preserve attaches).

Even if a party establishes duty and prejudice, if it "seeks an adverse inference to remedy the spoliation, it must also prove bad faith. Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case. Without a showing of bad faith, a district court may only impose lesser sanctions." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations and quotation omitted). The Tenth Circuit has found that this bad-faith

4

requirement "finds strong support in an explanation by the Advisory Committee to the Federal Rules of Civil Procedure for the same requirement in [the] virtually identical context" of Fed. R. Civ. P. 37(e) (governing sanctions for the failure to take reasonable steps to preserve electronically stored information). *EEOC v. Jetstream Ground Serv., Inc.*, 878 F.3d 960, 965 (10th Cir. 2017). The 2015 Adivisory Committee notes to Rule 37(e) provide a "commonsense explanation" for the bad faith requirement, as follows:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

*Id.* at 966 (citing Fed. R. Civ. P. 37 Advisory Committee Note to Subdivision (e)(2), 2015 Amendment).

The moving party has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it. *Zbylski*, 154 F. Supp. 3d at 1160.

**1. When did Defendant's duty to preserve evidence arise?**

Concerning Defendant's duty to preserve evidence, under the circumstances in this case, the Court finds it arose on June 22, 2017, when Plaintiff's attorney emailed Defendant a litigation hold letter. Though that letter has not been reviewed by the Court, the Court did review emails Plaintiff's counsel sent Defendant on June 17 and 19 (before

5

the litigation hold letter).[4] The June 17 email informed Defendant that Plaintiff's counsel was investigating "gender discrimination, as it appears that our client was suspended upon allegations of acts that females have regularly committed and not been disciplined for, let alone suspended." [#93-3.] The June 19 email informed Defendant that Plaintiff was "being discriminated against by being held out on suspension for discriminatory (and now retaliatory) reasons," and further that "[w]e will proceed to protect our client's right." [#93-5.] Plaintiff's litigation hold letter to Defendant followed on June 22, 2017. Based on these facts, and considering the factors discussed in *Zbylski*, *supra*, the Court finds Defendant's duty to preserve evidence arose on June 22, 2017.[5]

### 2. Defendant's Alleged Destruction of Plaintiff's Company Cell Phone

Plaintiff seeks spoliation sanctions because he claims Defendant wiped his company cell phone clean after his termination. According to Plaintiff, the phone contained evidence in the form of Plaintiff's emails and text messages. In response to Plaintiff's written discovery requests, Defendant first responded that it "repurposed the company cell phone that Plaintiff had been using by giving it to another United employee, and thus, the phone's contents as existed when used by Plaintiff no longer exists." [#93-1.] However, Defendant subsequently supplemented that response stating that it had no record of receiving the phone back from Plaintiff after his discharge. Defense counsel

---

[4] The Parties informed the Court of the contents of this letter during the July 10, 2019 Discovery Hearing. [*Cf.* #94 (Courtroom Minutes).]

[5] The fact that Defendant terminated Plaintiff's employment the day after it received the litigation hold letter does not alter the Court's finding. The circumstances of the June 17 and 19 emails, and the June 22 litigation hold letter, all of which concerned Plaintiff's suspension demonstrate that Defendant reasonably could have anticipated litigation over Plaintiff's subsequent discharge as of June 22, 2017.

explained during the hearing with this Court that the first answer was based on a general inquiry that yielded a response based on Defendant's usual and customary practice with company-issued cell phones upon a separation of employment. The second and conflicting answer was based on a more detailed inquiry into the specific phone issued to Plaintiff. During the hearing, defense counsel confirmed that Defendant has determined it has no record of receiving Plaintiff's company cell phone back from Plaintiff, and she subsequently provided a supporting declaration from James Burke, Defendant's Category manager for Mobility Programs, who attests that he has "been informed that United has no record of receiving Wolff's company cell phone back from Wolff after he was terminated . . . ." [#96-1 at ¶3.] Plaintiff, for his part, is adamant that he mailed the phone back to Defendant.

Based on the record currently before the Court, Plaintiff has failed to show that Defendant had the company cell phone in its possession to be able to destroy (intentionally or otherwise) any evidence on the device. Despite Defendant's conflicting discovery responses, Defendant has credibly explained the reason for the discrepancy. At present, either or both parties may be responsible for loss of the phone. Without more, there is insufficient evidence for this Court to find spoliation as relates to the company-issued cell phone.[6]

---

[6] The physical cell phone aside, Defendant has explained that some data might be recoverable from Plaintiff's iCloud account, however, Plaintiff would need to provide his iCloud password to Defendant and his iPhone settings for backing up the device. The Court understands that Plaintiff has not agreed to provide this information, which begs the question of how critical this information is to his case.

### 3. Defendant's Alleged Destruction of Computers

Like the cell phone, Defendant has stated that it "repurposed" the computers Plaintiff used to get approvals (by email apparently) for late arrivals and early departures. In his discovery brief and during the hearing with this Court, Plaintiff focused on destruction of the physical computer(s). But his counsel conceded at the hearing that he is not aware that Plaintiff saved emails or other information pertinent to this dispute to the hard drive of any computer. Therefore, destruction of the physical computer does not raise a spoliation issue because there is no evidence the computer itself contained evidence pertinent to this case.

Instead, Defendant has confirmed that, in 2017, company emails were stored on a physical server maintained by Defendant. Defendant's policy in 2017 was to retain emails for six months—an email would automatically delete six months after it was created or sent. There was an additional period of approximately 14 days during which the automatically deleted emails could be retrieved from the server.

Plaintiff has not specified a time period or any dates upon which he sent the emails he contends Defendant destroyed. As noted above, only emails which Defendant allowed to automatically delete after June 22, 2017 implicate Defendant's preservation obligation. Based on Defendant's policy of emails automatically deleting six months from the time they are sent or created, only emails Plaintiff sent or created between December 22, 2016 and June 23, 2017 (the date of his discharge) fall within Defendant's preservation obligation. In other words, had Defendant suspended its automatic deletion of emails

when the obligation to do so arose on June 22, 2017, it would have preserved emails sent or created as far back as December 22, 2016.

The Court is perplexed that Defendant apparently made no effort to suspend the automatic deletion of emails related to Plaintiff, at any time. Defendant has not indicated it took any steps to suspend its automatic deletion of emails associated with Plaintiff at any time pre- or post-litigation. Defendant's dereliction of duty notwithstanding, Plaintiff seeks the penultimate sanction of judgment in his favor. But he has produced no evidence to suggest that Defendant, when failing to suspend its automatic deletion of emails, acted with the intent to deprive Plaintiff of that evidence, or otherwise engaged in bad faith conduct. *See* Fed R. Civ. P. 37(e)(2). *See Browder v. City of Alberquerque*, 209 F. Supp.3d 1236, 1247 (D.N.M. 2016) (finding no evidence of intentional loss or bad-faith loss of documents even where defendant failed to retain certain documents based on "questionable" and negligent retention decisions by employees and declining to impose adverse inference instruction); *see also* Fed. R. Civ. P. 37(e) advisory committee's note (2015) (explaining that intentional deprivation is required for adverse inference and other more severe sanctions, because "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have").

Likewise, the Court does not find that Plaintiff has suffered prejudice. Giving Plaintiff the benefit of the doubt that he did indeed send and receive emails approving his late arrivals and early departures, according to Defendant: "Sean Huster was Wolff's

manager at United. He is the only person Wolff has specifically identified who he claims gave him permission to arrive late or leave early from work, although he contends there could have been others, as well. United has produced the emails and text messages between Huster and Wolff that it recovered from Huster's work cell phone and email account, so there was no destruction of that evidence." Further, according to Plaintiff, handwritten notes by one of Defendant's managers confirm that Defendant was informed of Plaintiff's permissions to be late or leave early including via texts. [#93 at ¶13.] Plaintiff has explained that a pivotal manager's written notes state the following on June 14, 2017: "Turns over [plaintiff checks out] with Greg [a fellow supervisor] either by text or phone call. Keeps record of others late on his phone." [*Id.*] Thus, it appears that "if relevant emails existed and were deleted these facts could be established through the testimony of those involved in the communications, through references to the deleted emails in other communications, through records from the e-mail system itself, or by way of various other forms of circumstantial evidence." *Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*, No. 08-CV-414-GKF-FHM, 2011 WL 4954250, at *2 (N.D. Okla. Oct. 18, 2011).

For these reasons, though negligent and careless, the Court finds no indication in the circumstances of this case of intentional conduct or bad faith on Defendant's part in failing to suspend its automatic deletion of emails. Thus, the Court declines to sanction Defendant with a judgment against it. The Court further declines to impose a lesser sanction because Plaintiff has not been prejudiced by the loss of these alleged emails.

### 4. Defendant's Alleged Destruction of Plaintiff's Notes and Notebooks

Lastly, Plaintiff claims Defendant intentionally destroyed his "critically important notes and notebooks." According to Plaintiff, the "notes and notebooks contained records of a plethora of females in the same job title and department who had been late and departed early without discipline." [#93 at p.2.] These notes were contained in three notebooks consisting of a journal, a composition notebook, and a spiral-bound notebook (collectively, "notebooks"). Plaintiff alleges Defendant destroyed these notebooks sometime after his discharge on June 23, 2017, which he kept in his desk or in his workspace.

Defendant claims it has no knowledge of these notebooks. According to Defendant, Plaintiff never mentioned these notebooks until this discovery dispute arose. Nor did he ask for any documents or notebooks in his suspension meeting, his termination meeting, or in his attorneys' correspondence with Defendant, or in prior discovery in this case.

Even assuming the existence of the notebooks, Plaintiff has failed to demonstrate Defendant's bad faith or intent to deprive him of the use of these notebooks in the litigation. First, Defendant claims it has no knowledge of the notebooks. To the extent the notebooks did exist and were kept in Plaintiff's workspace, there is no indication of who cleared Plaintiff's workspace after his termination, whether they came across the notebooks at the time, and if so, whether they understood what the notebooks were, and ultimately, what they did with them thereafter. On this record, assuming the notebooks did exist, Defendant's failure to preserve them or return them to Plaintiff after his

discharge amounts to mere negligence. *See* Fed. R. Civ. P. 37(e) advisory committee's note (2015).

Nor does the Court find that Plaintiff has suffered prejudice. In his deposition, Plaintiff identified the following females as comparators: Ashley Opperman, Katherine Cruz (Echevita), Cheryl Serale, Karen Dauily, Paula Abriz, Carla Conde, Sonya Bauza, Lisa Marshall, Monika Derdas and Patricia Zeloft. A majority of these women were mentioned in one or more of Plaintiff's notebooks, according to Plaintiff. Thus, because he has identified the majority of his primary comparators, the circumstances concerning their alleged comparable circumstances and differential treatment could be established through the testimony of these comparators and related witnesses, or through other forms of direct or circumstantial evidence involving these individuals. *See, e.g., Aircraft Fueling Sys., Inc.*, 2011 WL 4954250, at *2.

Thus, even assuming Defendant's lost or destroyed Plaintiff's notebooks, the Court finds no indication of intentional conduct or bad faith on Defendant's part and declines to sanction Defendant with a judgment or a lesser sanction.

### 5. Plaintiff's Alleged Destruction of his Personal Cell Phone

Defendant likewise seeks sanctions for Plaintiff's alleged bad faith destruction of his personal cell phone. Plaintiff testified in his deposition that he received text messages giving him permission to arrive late or leave early on his personal cell phone in addition to his work cell phone. However, Plaintiff no longer has his personal cell phone because it either fell into a lake when he was fishing, or he turned it in when he upgraded his

phone.[7] At a minimum, Defendant seeks an adverse inference instruction that Plaintiff did not receive permission to be late or leave early from work by text or voice message to his personal cell phone from January 1 through June 15, 2017.

Under the circumstances of this case, the Court finds that Plaintiff's duty to preserve relevant information arose on June 22, 2017 at the latest, when his lawyer sent a litigation hold letter to Plaintiff. Plaintiff failed to preserve his personal cell phone, which was lost or turned in for an upgrade sometime after his discharge on June 23, 2017. Thus, his preservation obligation is implicated.

The way Plaintiff lost the phone is pertinent to the Court's sanctions analysis. On the one hand, losing the phone because it fell into a lake is the epitome of negligence, which negates a finding of bad faith. On the other hand, turning the phone in for an upgrade at a time when Plaintiff had a duty to preserve its contents may suggest bad faith. The Court finds the latter equally perplexing to Defendant's failure to suspend its automatic deletion of emails from its server.

Regardless of the method of destruction, the Court finds a lack of evidence of an intent to deprive Defendant of the evidence allegedly contained on the personal cell phone. Indeed, the evidence contained on the phone would benefit Plaintiff in his proof that he received permission to leave early and arrive late, suggesting little incentive for Plaintiff to intentionally destroy that evidence. Defendant's argument that the phone may lack text messages or data showing he received permission is speculative and not

---

[7] Plaintiff has had two personal cell phones since his discharge. He cannot recall whether the one he received relevant text messages on is the one he lost in the lake or the one he turned in for an upgrade.

supported by the record, particularly where Defendant has conceded that it "is not currently aware of specific data on that cell phone that would be helpful to its case . . . ." [#92 at p.19.] *See Cox v. Swift Transp. Co. of Arizona, LLC*, No. 18-CV-117-CVE-JFJ, 2019 WL 3573668, at *3 (N.D. Okla. Aug. 6, 2019) ("Although Plaintiffs argue that the evidence surely would have been retained had it been favorable to Swift, the Court finds this argument overly speculative and unsupported.") For these reasons, the Court declines to sanction Plaintiff for the loss of his personal cell phone.

## C. CONCLUSION

To be clear, the Court is troubled by both Defendant's failure to suspend its automatic deletion of emails, and Plaintiff turning his personal cell phone in for an upgrade when it allegedly contained evidence germane to his case (assuming he lost the phone this way rather than inadvertently dropping it in a lake). Indeed, the *Guidelines Addressing the Discovery of Electronically Stored Information* ("Guidelines") promulgated by this District Court guide that e-discovery "requires counsel and their clients to be proactive and to address ESI in a timely and thoughtful manner," and that "a party must take reasonable steps to meet its preservation obligations." *See* the September 1, 2014 Guidelines available on the District of Colorado website at Guideline 2 and Commentary 2.2. The Parties' failures in this regard suggest a woeful lack of proactivity, thoughtfulness, or reasonableness in attempting to meet their preservation obligations. The Court's decision not to sanction either party should not be read as this Court condoning any litigant's dilatory efforts at meeting their preservation obligations. Instead, for the reasons stated above, the circumstances involved in this dispute do not warrant

sanctions for alleged spoliation notwithstanding the Parties' respective preservation failures.

IT IS ORDERED that the Parties' respective requests for spoliation sanctions are DENIED.

DATED:   September 17, 2019

BY THE COURT:

_____
S. Kato Crews
U.S. Magistrate Judge