**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 18-cv-00591-RM-SKC

ERIC WOLFF,

     Plaintiff,

v.

UNITED AIRLINES, INC.,

     Defendant

---

## ORDER

---

Plaintiff Eric Wolff, a male, alleges his termination was the product of reverse sex discrimination and of retaliation for reporting reverse sex discrimination. This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 87) and Defendant's Motion to Strike (ECF No. 112) three declarations submitted by Mr. Wolff in opposition to the Motion for Summary Judgment. The motions are fully briefed. Upon consideration of the motions, the relevant parts of the court record, and the applicable legal authorities, and being otherwise fully advised, the Court finds and orders as follows.

## I.     BACKGROUND

Mr. Wolff was hired by Defendant United Airlines, Inc. on June 5, 2000. During the relevant time period, he was employed by United as an Airport Operations/Customer Service Supervisor ("Customer Service Supervisor" or "CSS") at Denver International Airport ("DIA"). As an employee in a management position, Mr. Wolff was held to a higher standard of performance than a non-management/frontline employee. United's policy expected employees

to report to work as scheduled and on time; when supervisors are absent, arrive late or leave early, another supervisor has to cover for them. Mr. Wolff undisputedly arrived at work late or left early. Mr. Wolff, however, claims he had permission to do so because of his child-care needs and that he could make up lost time by skipping lunch. United contends otherwise. These problems apparently began in 2016.

In Mr. Wolff's 2016 Mid-Year Performance Review (1/1/16-6/30/16), Sean Huster, Mr. Wolff's manager, wrote that "[a]nother area which will require your focus is your dependability and reliability. It is the expectation that you arrive to work on time and when scheduled. . . ." (ECF No. 87-17, p. 7.[1]) Whether Mr. Wolf had other performance/work related issues that year is disputed by Mr. Wolff. For example, it is undisputed that on July 26, 2016, Mr. Wolff was placed on a Termination Warning level of discipline for carrying a weapon through security at DIA, after he was issued a violation notice and afforded a hearing by DIA. (ECF Nos. 87-10, 87-11, 87-13, 87-14.) That Termination Warning Letter also stated "[f]urther unacceptable personal conduct or policy violations will result in further disciplinary action up to and including termination." (ECF No. 87-11.) Mr. Wolff does not dispute he received the warning; what he disputes is whether what he was carrying was a "weapon" or a "keychain ornament," whether this object was questioned by TSA or by a private security person at the United employee turnstile, and whether this questioning of the object was instigated by some action on the part of Mr. Huster. In light of the Court's resolution of the issues, such dispute is immaterial.

On the day that Mr. Wolff received his Termination Warning Letter, July 26, 2016, he filed a complaint with United's Ethics & Compliance Office. He complained of unfair treatment,

---

[1] As used in this Order, except for deposition transcripts, the page reference is to the page number assigned to the document by the ECF system found in the upper right-hand corner of the document.

an extramarital affair by Mr. Huster,[2] and other matters, but not of reverse sex discrimination. (ECF No. 87-23.)

In the Fall of 2016, Mr. Huster placed Mr. Wolff on a 90-day Performance Improvement Plan ("PIP") for the following stated reasons: (1) his unprofessional and undignified communication with fellow employees; and (2) his repeated inability to arrive to work on time/as scheduled.[3] Mr. Wolff successfully completed the PIP in late 2016 but his PIP informed Mr. Wolff that "a decrease in performance after successfully completing the PIP may result in termination from United without the issuance of another performance improvement plan." (SUMF at ¶ 15.)

Mr. Wolff's 2016 Year End Performance Review also stated he had attendance issues: "You struggled in holding to the expectations of being punctual which caused concerns in your ability to build a cohesive unit with your peers. In UROC, fostering trust was elusive as you struggled leading your team because of an inability to remain empathetic to those around you." (SUMF at ¶ 17.)

On April 11, 2017, Mr. Huster sent an email to his supervisees (including Mr. Wolff) stating it was important to make sure that all leaders were available – "that means that we are in our work area, radio on, managing the operation and available to respond to all operational calls" – until they have their relief in place. (SUMF at ¶ 7.)

Mr. Wolff continued to arrive late to and leave early from work. In June 2017, when Mr. Wolff was unable to be found when he was scheduled to work, Customer Service Manager Tamera Mitchell pulled the badge swipe reports for Mr. Wolff. The badge swipe reports

---

[2] Which Mr. Huster disputes, but such dispute is irrelevant here.
[3] The PIP stated, in relevant part: "Reliability/Dependability – Consistently come to work on-time and prepared. Your weekly schedule needs to be accurate and communicated to me at the onset of each week. Any changes in your schedule throughout the week also need to be reported to me as they occur." (ECF No. 87-15, p. 1.)

recorded by the City and County of Denver at DIA, which reflect the time an employee passes through a specific point at the airport, showed that between March 1 and June 7, 2017, Mr. Wolff arrived late for work 12 times and left before the end of his shift 27 times.  (SUMF at ¶ 20.) Luke David, then the Director of Customer Service for United at DIA,[4] in consultation with the Customer Service Managers and Senior Manager of Human Resources, Ed Eget, for United at DIA, decided to terminate Mr. Wolff's employment.  (ECF No. 87-20; ECF No. 87-2 at ¶ 33; No. 87-3 at ¶ 20.)

On June 14, 2017 two events occurred.  First, Customer Service Managers Tamera Mitchell and Jim Ronan suspended Mr. Wolff, took away his badge, and had him escorted off the premises.  In United's view, this was the first step in Mr. Wolff's termination process.  Next, Mr. Eget sent an email to other United management employees stating that United intended to terminate Mr. Wolff's employment for "time theft."  (ECF No. 87-20.)

During the June 14 suspension meeting, Mr. Wolff stated he had an arrangement with or permission from Mr. Huster[5] to arrive late or leave early and identified two women (Debra Vigil-Keighin and Sonya Bauza) who also arrived late or departed early.  Ms. Mitchell followed up on the two women identified; she pulled the badge swipe records for both women.  United found no late arrivals or early departure for Ms. Bauza but did find late arrivals for Ms. Vigil-Keighin. Ms. Vigil-Keighin, however, had no prior discipline, counseling or warnings; was not on a Termination Warning; and had never been on a PIP.  In addition, she had worked late to make up for time when she arrived late.  Nonetheless, United disciplined Ms. Vigil-Keighin and issued her a Written Warning.

---

[4] CSS's report to their Customer Service managers, and the managers report to Mr. David.  (ECF No. 87-3 at p. 3.)
[5] Mr. Wolff also testified he received permission from other managers – "multiple people" – but his arguments rely on Mr. Huster, so the Court does so as well.  (ECF No. 87-5, 187:1-14 ("multiple people"); OSUMF, e.g., ¶¶ 5, 18, 26 (stating he obtained permission from his manager, Mr. Huster).)

Mr. David, the decisionmaker, was apparently informed of Mr. Wolff's contention and followed up with Mr. Huster; he contacted Mr. Huster who stated there was no such arrangement.[6] Moreover, Mr. David decided that, in light of Mr. Wolff's employment history, e.g., the Termination Warning and his 2016 PIP, his decision to terminate Mr. Wolff would not have changed even if he had permission. Mr. David was not aware that Mr. Wolff made a complaint to the Ethics & Compliance Office when he decided to suspend and terminate Mr. Wolff. Mr. David was also not aware of any other Customer Service Supervisor who was similarly situated to Wolff, with a similar number of late arrivals and early departures, who had been previously warned, counseled and been on a PIP for attendance issues and who was on a Termination Warning and was treated more favorably.

Two days later, on June 16, 2017, Mr. Wolff filed a complaint of sex discrimination with United's Ethics & Compliance Office. On June 17, 2017, via email, Mr. Wolff's attorney (John Olsen) advised Mr. David, Ms. Mitchell, and Mr. Ronan that he was conducting an investigation of gender discrimination. On that same day, Mr. David informed Mr. Eget and Steve Jacquith of Mr. Olsen's email.

By email dated June 20, 2017, Mr. Huster submitted a recap to Mr. David which stated that on April 4, 2017 he counseled Mr. Wolff about his repeated late arrivals to and early departures from work. (ECF No. 87-19.) While Mr. Wolff disputes this occurred, it is immaterial to the Court's resolution of this case.

On June 23, 2017, Messrs. David and Eget met with Mr. Wolff at the United concourse

---

[6] Mr. Wolff testified to the contrary and argues that Mr. Huster was lying to Mr. David. But, this dispute is irrelevant in light of the Court's rulings in this Order.

Mr. Wolff also argues Mr. David's declaration contains hearsay. The Court rejects that argument as Mr. Huster submitted a declaration of what he told Mr. David. (ECF No. 114-3, ¶ 15.)

and informed him of his termination.  Mr. Wolff recorded that conversation.[7]  (ECF No 114-7, transcript of recording; No. 130 (audio copy of recording).)  During the termination meeting, Mr. David gave Mr. Wolf his termination letter, signed by Mr. David.  Among other things, the letter stated that he "had been late and/or left early without permission numerous times between March 1 and June 7, 2017."  (ECF No. 87-16.)  Mr. Wolff asked if there was an appeal process; Mr. David said there was.  Mr. Eget informed Mr. Wolff that he should write to "human resources and Steve Jaquith" to let them know he wanted to appeal and United would set up a hearing officer to hear it.  (ECF No. 130.)  Mr. Wolff sent a letter to "Human Resources and Personnel Appeals" at United's office in Chicago.  He did not write to Mr. Jaquith, the Vice-President in charge of United's Denver hub at DIA, or to anyone else.  The parties dispute whether there is such an office in Chicago, or whether United has any record of receiving the appeal.  Regardless, United never held an appeal.

Mr. Wolff's lawsuit followed.  During his deposition, Mr. Wolff testified that he could not recall on which dates between January-June 2017 he had permission to come in late or leave early or which manager gave him permission to do so.  He also identified at least 10 other women he alleges arrived late or came in early.  (OSUMF at ¶ 39.)  However, as to such women, he testified that they were all on different teams.  Further, he could not recall their direct bosses (managers), whether any shared his supervisor, or how many times they were late.  He recalled that "some left early," and did not know what disciplined any of them were on at any time at United, whether any were ever on a termination warning, or whether any were put on a PIP for attendance or dependability.  He also did not know if any of them had permission to arrive late or leave early on the occasions he said they did.

---

[7] Messrs. David and Eget were unaware that Mr. Wolff was recording their meeting, but a copy of the recording was provided to United after the lawsuit was filed.

After discovery was closed, United filed the Motion for Summary Judgment at issue. United's Motion to Strike followed, filed to challenge certain matters in Mr. Wolff's response to the Motion for Summary Judgment.

## II.     LEGAL STANDARD

### A.  Motion to Strike

***Fed. R. Civ. P. 37(c).***  Rule 26 of the Federal Rules of Civil Procedure requires the parties to make disclosures and supplemental disclosures.  Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  The determination of whether a Rule 26 violation is justified or harmless "is entrusted to the broad discretion" of this Court.  *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (citations omitted).  In exercising this discretion, the Court should consider several factors including "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  *Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

***Rule 56(c)(2).***  Rule 56(c) of the Federal Rules of Civil Procedure, governing motions for summary judgment, provides a party asserting that a fact cannot be or is genuinely disputed must properly support the assertion.  A supporting affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  If it does not,

"a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

*The Court's Civil Practice Standards.* Pursuant to the Standards, unless leave has been granted otherwise, a nonmovant is limited to forty undisputed material facts but may, of course, respond to the movant's factual statements. In addition, the Standards specifically provide that facts are limited to *facts*, not argument, and argument may be stricken by the Court. *See Standards* at IV.C.

### B. Summary Judgment

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569–70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). "The burden of showing that no genuine issue of material fact exists is borne by the moving party....Where, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (quotation and citation omitted).

Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the

existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). In considering a motion for summary judgment, the court "draws all reasonable inferences in favor of the nonmoving party." *Adamson*, 514 F.3d at 1145.

"At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, for example, the parties may submit deposition transcripts and affidavits as support. *Id.*; Fed. R. Civ. P. 56(c)(1)(A). The contents or substance of the evidence, however, must be admissible. Thus, for example, courts should disregard hearsay statements contained in affidavits. *Id.*; Fed. R. Civ. P. 56(c)(4) ("An affidavit…must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant…is competent to testify on the matters stated.").

## III.   ANALYSIS

### A.  The Motion to Strike

United seeks to strike three Declarations submitted in Mr. Wolff's response brief and certain responses made by Mr. Wolff in response to United's statement of undisputed material facts. The Court starts with the three Declarations.

***The Declarations.*** The Declarations at issue are those of Rhonda Eachus, Jaymee Barrington, and Elbert McDuffie (the "declarants"). United argues the Declarations should be stricken because (1) Mr. Wolff failed to timely supplement his disclosures to include these declarants; and (2) the Declarations are improper for several reasons, including lack of foundation, hearsay, and lack of relevancy and speculation. The Court agrees.

Mr. Wolff did not disclose such witnesses until after discovery was closed. Thus, Mr. Wolff may not use such Declarations unless the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court finds Mr. Wolff fails to meet his burden.

Mr. Wolff apparently contends his disclosures were sufficient because the declarants are, or were, United employees and their names were mentioned or appeared in either a discovery response and/or in a deposition. Based on the Court's review of where the declarants' names were mentioned, the Court is not persuaded. Such "disclosures" were not sufficient to put United on notice that the declarants would likely have discoverable information that Mr. Wolff may use to support his claims or defenses, to the prejudice of United. Nor are they sufficient to show the failure to do so was substantially justified or harmless. *See Smith v. Aurora Pub. Sch.,* 318 F.R.D. 429, 432 (D. Colo. 2016) ("It makes no difference that these individuals were APS [defendant's] employees. Until Smith put APS on notice that she might use those employees' testimony in her support, APS could properly presume that Smith had elected otherwise."). Especially since Mr. Wolff's attorney *represents two of the declarants* and Mr. Wolff worked with them. Both facts negate any argument of good faith.

Mr. Wolff's offer to allow United to interview such declarants or give tape-recorded statements comes too late as discovery had already closed, and trial is now set. Nor has he shown that this would be an adequate substitute for formal discovery. Thus, the Court finds prejudice to United which, at this juncture, is too late to cure.[8] Accordingly, the Declarations are stricken on this basis[9] and will not be considered in resolving the Motion for Summary

---

[8] Even if this motion had been decided earlier, the Court would reach the same conclusion as the matter was to be set for trial after discovery had closed. Allowing these declarants would prolong this litigation.

[9] As stated, United also argues the Declarations are improper for a number of reasons, including lack of foundation, hearsay, and relevance. Although the Court need not reach this issue, it agrees. *See* Fed. R. Civ. P. 56(c)(4). For example, Ms. Barrington states "when she worked with [Mr. Wolff], he always got permission to arrive late or leave early." It is unknown, however, when she worked with Mr. Wolff, how she knew he got permission, or from whom he allegedly got permission. This also holds true for Ms. Eachus's Declaration which, for example, states what she

Judgment.

**Mr. Wolff's Response to the Statement of Undisputed Material Facts.** United moves to strike a number of Mr. Wolff's responses to United's factual statements as violative of the Court's Civil Practice Standards. Mr. Wolff counters that his responses also address inferences or implications from United's facts. Upon review, while some leeway is permissible, the Court agrees that Mr. Wolff has violated the Civil Practice Standards in some respects.[10] However, the Court finds that wholesale disregard of the responses are unwarranted even if they go beyond what is responsive and, further, United has had an opportunity to reply to such responses and has done so. Accordingly, on this record, the Court finds as follows: (1) as the Declarations have been stricken, they will not be considered; (2) arguments regarding or relating to spoliation are stricken and will not be considered as that has already been addressed by the Magistrate Judge (ECF No. 124); and (3) comments or arguments by Mr. Wolff as to matters which Mr. Wolff admits are undisputed are stricken and will not be considered.

**B. The Motion for Summary Judgment**

**1. The State Law Claims**

The Court starts with the state law claims because Mr. Wolff mainly fails to respond to United's arguments concerning these claims apparently based on the mistaken belief the Court had already dismissed all of his claims except for the Title VII sex discrimination and retaliation

---

allegedly heard ("Eric reported") at staff meetings or what Mr. Wolff allegedly "informed" her. And, as to Mr. McDuffie, the fact that he was suspended and returned to work, without more, is irrelevant to Mr. Wolff's suspension and termination.

[10] The Court is also well aware of various misstatements made in Mr. Wolff's responses. For example, in response to SUMF ¶ 35, discussing Mr. Wolff's June 23, 2017 termination, he responds by discussing statements he made during his June 14, 2017 suspension meeting with Ms. Mitchell and Mr. Ronan. Further, Mr. Wolff states that Mr. David testified that *Mr. Wolff* told Mr. David that he had permission to arrive late and depart early when in fact Mr. David testified that he was told by *Ms. Mitchell and Mr. Ronan*. The Court will give Mr. Wolff the benefit of the doubt that his various misstatements were simply errors rather than an intent to mislead, except for the misrepresentation concerning the recorded June 23, 2017 termination meeting. The Court has listened to the audio and finds Mr. Wolff has clearly misrepresented what he was told at his termination meeting. Such misrepresentation is not well taken. It is also insufficient to create a triable issue of fact.

claims. At the time Mr. Wolff filed his response, United's motion to dismiss was pending but the Magistrate Judge had not yet made a recommended ruling on that motion. Regardless, the Magistrate Judge subsequently recommended dismissal of all state law claims except for the claim for promissory estoppel based on the promise of an internal appeal, which recommendation the Court has accepted over the objections of the parties. Thus, that portion of the state law estoppel claim remains.

United contends that such claim[11] is deemed confessed and, accordingly, summary judgment should be granted. United cites to two Tenth Circuit decisions, *Hinsdale v. City of Liberal Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) and *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1391 (10th Cir. 1992).[12] *Hinsdale* is an unpublished decision and *Coffey* stated that *"[o]nce a party moving for summary judgment has met [its] initial burden*, the party resisting the motion cannot rest on his pleadings." 955 F.2d at 1393 (emphasis added). Thus, the Court finds "a party seeking summary judgment must show the law and available evidence compel the requested outcome." *Davilla v. Enable Midstream Partners L.P.,* 913 F.3d 959, 968 (10th Cir. 2019) (citations omitted). But, when a party fails to properly address another party's assertion of fact, the court may "consider the fact undisputed for purposes of the motion; … grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *Davilla,* 913 F.3d at 968 ("the movant's burden of production at the summary judgment stage does not abrogate the nonmovant's obligation to contest matters of law"). On this record, the Court will consider United's supported facts which are not properly refuted as undisputed and examines whether, in light of such undisputed facts and the law, United is entitled to summary judgment on the

---

[11] Actually, United's argument is directed to all state law claims but this argument is moot as to those claims which have now been dismissed.
[12] United also cites to a district court opinion which, of course, is not controlling.

remaining state law claim based on promissory estoppel.

In order to establish a claim based on promissory estoppel, Mr. Wolff must establish: "(1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (citing *Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995) & Restatement (Second) of Contracts § 90 (1981)). "In proving detrimental reliance, the employee must show action or forbearance taken as a result of the employer's alleged promises." *Vasey v. Martin Marietta Corp*., 29 F.3d 1460, 1466 (10th Cir. 1994) (applying Colorado law)*.*

In this case, Mr. Wolff's promissory estoppel claim which remains is based on United's alleged promise made during his June 23, 2017 termination meeting that he could appeal. (ECF No. 70 at ¶¶ 44-47.) During that meeting, which Mr. Wolff recorded and gave to his lawyer,[13] Mr. Eget stated that Mr. Wolff was to send a notice requesting an appeal to "human resources *and* Steve Jaquith." (Emphasis added.) Mr. Wolff allegedly sent a request for an appeal to human resources in United's Chicago, Illinois office. However, it is undisputed that Mr. Wolff did not send any notice requesting an appeal to Mr. Jaquith as set forth in the "promise" upon which he relies. As Mr. Wolff did not follow the directions given to him by Mr. Eget at his termination hearing, his claim based on promissory estoppel fails.

To the extent Mr. Wolff relies on the "promise" contained in United's Working Together Guidelines, this too fails.[14] The Guidelines provide that "[e]mployees wishing to appeal must

---

[13] As stated, the Court has listened to the recording to confirm what was stated during that meeting. Mr. Wolff cannot create a genuine issue of material fact simply by misrepresenting what he was told during that meeting.
[14] The Court's review of the operative complaint shows this claim is based on the June 23, 2017 termination meeting. As United addresses this issue, the Court will do so.

submit a written request within 14 business days of notice of the decision or action to their division leader with a copy to their human resource partner." (ECF No. 102-23, p. 2.) At the time of Mr. Wolff's termination, Mr. Jaquith was his division leader and Mr. Eget was his human resource partner, but Mr. Wolff did not send any written request to either of them, or to any Human Resources representative at United's Denver hub at DIA. (SUMF at ¶¶ 62-64.) Thus, any promissory estoppel claim based on the Guidelines also fails.

### 2. Sex Discrimination

***Direct or Indirect Evidence.*** Mr. Wolff claims reverse discrimination under Title VII. To survive summary judgment on a claim of sex discrimination "plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). Under the indirect evidence three-step framework, a plaintiff must first establish a prima facie case. If the plaintiff does so, the burden of production (not persuasion) then shifts to the defendant employer "to offer a legitimate nondiscriminatory reason for its employment decision." *Wilkie*, 915 F.3d at 1267 (quotation marks and citation omitted); *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 884 (10th Cir. 2018) (burden of production). "If the employer [meets its burden], the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Wilkie*, 915 F.3d at 1268 (quotation marks and citation omitted). The Court starts – and ends – with the prima facie case.

***Prima Facie Case.*** To establish a prima facie case of discrimination, a plaintiff ordinarily must show (1) plaintiff belongs to a protected class; (2) plaintiff was qualified for the

position; (3) plaintiff suffered an adverse employment action; and (4) plaintiff was treated less favorably than others, e.g., the job was not eliminated after plaintiff's discharge or the employer treated similarly situated employees more favorably. *Argo*, 452 F.3d at 1201; *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). In a reverse discrimination case, however, a plaintiff bears a higher burden. *Adamson*, 514 F.3d at 1141. A plaintiff "'must, in lieu of showing that he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.'" *Argo*, 452 F.3d at 1201 (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992)); *see also Adamson*, 514 F.3d at 1141 (same). "Alternatively, a plaintiff may produce facts 'sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred.'" *Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 590).

United argues Mr. Wolff fails to meet his burden of establishing any of the elements for a prima facie case of reverse gender discrimination, starting with the argument that Mr. Wolff has no evidence of gender-based animus against men generally or in Mr. Wolff's case specifically – the first factor. The Court agrees.

Mr. Wolff's response not only cites to the incorrect standard, relying on the traditional standard inapplicable to his reverse discrimination claim, but also makes the conclusory argument that he meets such standards because "he is a man who was terminated even though he was qualified for the job and was treated less favorably than his women counterparts." (ECF No. 101, p. 2.) Mr. Wolff, however, admits he does not know if men were not being treated the same as women at United and "he can't speak for other men" because he does not work with men. But "[i]t is not enough…for a plaintiff merely to allege that he was a qualified man who was treated differently than a similarly situated woman." *Adamson*, 514 F.3d at 1150 (citing *Notari v.*

*Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992). "Instead, [Mr. Wolff] must allege and produce evidence sufficient to support a reasonable inference that, *but for* his status as a man, the challenged decision would not have occurred." *Id.* (emphasis in original). Here, Mr. Wolff fails to do so. Instead, Mr. Wolff merely argues that he is a man, then jumps to the other two prima facie requirements.[15] Thus, Mr. Wolff provides no evidence to satisfy this burden – either direct evidence, evidence sufficient to support a reasonable inference that but for Mr. Wolff's status he would not have been terminated, or background circumstances that support an inference that United is one of those "unusual employers" who discriminates against the majority. Accordingly, summary judgment is granted in favor of United on Mr. Wolff's claim for gender discrimination. *See Celotex Corp.*, 477 U.S. at 322 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial")

### 3. Retaliation

A claim of Title VII retaliation may also be demonstrated by direct evidence or under the *McDonnell Douglas* framework discussed above. *Wilkie*, 915 F.3d at 1267. The parties apply the *McDonnell Douglas* framework in their papers. Under this framework, a plaintiff must establish a prima facie case of retaliation; if the plaintiff does so, the burden then shifts to the defendant to provide a legitimate, non-discriminatory rationale for the adverse employment action; if the defendant does so, the plaintiff must then show the defendant's proffered rationale is pretextual. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016). The Court again starts – and ends – with a prima facie case.

To establish a prima facie case, a plaintiff must show "(1) that [he] engaged in protected

---

[15] There is no dispute Mr. Wolff suffered an adverse employment action when he was terminated. To the extent Mr. Wolff now claims the failure to process his appeal is an adverse employment action, such claim fails in light of the Court's findings in favor of United on such allegations, e.g., no promissory estoppel claim.

opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Wilkie*, 915 F.3d at 1267 (quotation marks and citation omitted). To prove a causal connection, a plaintiff must "'present evidence of circumstances that justify an inference of retaliatory motive.'" *Wilkie*, 915 F.3d at 1271 (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)). A causal connection may be inferred if the protected conduct is closely followed by the adverse action. *Id.* at 1271. A gap of three months or more, standing along, is too long to support an inference of causation on its own. *Id.* at 1271. Instead, a plaintiff must present other evidence to establish causation. *Id.* at 1271.

Mr. Wolff contends he was terminated on June 23, 2017 in retaliation for complaining about sex discrimination. United argues Mr. Wolff made two complaints and a myriad of vague references to discrimination, none of which supports a prima facie case of retaliation. As to Mr. Wolff's first complaint made July 26, 2016, United contends it is not protected activity and it is too remote to support any causal connection. As to Mr. Wolff's second complaint made June 16, 2017, United contends it decided to terminate Mr. Wolff's employment before he complained. And, as to the myriad of other complaints Mr. Wolff allegedly made, United argues they are too vague to constitute protected activity. Thus, at issue are the first and third requirements. The Court examines the arguments, starting with the June 16, 2017 complaint upon which Mr. Wolff mainly relies.

***The June 16, 2017 Complaint.*** Mr. Wolff complained of sex discrimination via United's Ethics & Compliance Office on June 16, 2017, Mr. Wolff's attorney sent an email to United on June 17, 2017 that he was investigating sex discrimination, Mr. Eget was informed of the complaint made online on June 19, 2017, and Mr. Wolff was terminated on June 23, 2017. Thus,

Mr. Wolff contends, by this temporal proximity, he has established a prima facie case of retaliation. United, however, contends the undisputed material facts establish it decided to terminate Mr. Wolff *prior* to Mr. Wolff's June 16, 2017 complaint. While Mr. Wolff contends there is no "meaningful evidence of this in the record,"[16] the Court's review shows otherwise.

Specifically, by email dated June 14, 2017, Mr. Eget emailed management of Mr. Wolff's impending termination as follows:

### INVOLUNTARY EMPLOYEE SEPARATION

1. Name of employee being terminated/ Emp. Number.......... Eric Wolff

2. Position held by employee/ Station ......................................Sup -DEN CS 3

3. Seniority of employee ..........................................................6/5/2000

4. Expected Termination date....................................................6/16/2017

5. Description of reason(s) that employee **is being terminated**.

•        Violation of Performance Expectations: Time theft

(ECF No. 87-20 (bold added); RSUMF ¶ 24.) Mr. Eget's email cited to Mr. Wolff's work performance history including his most recent October 2016 PIP.

Mr. Wolff's argument that suspension does not mean termination will automatically follow does not show a contrary conclusion should be had. Even if true, in this case, Mr. Wolff's suspension did culminate in his termination based on a decision made before his June 16 complaint. That another employee may not have been terminated after suspension[17] or that United's policies do not require termination, without more, fails to create a material factual dispute here. Accordingly, Mr. Wolff's reliance on his June 16, 2017 complaint is unavailing. *See Kilcrease v. Domenico Transp. Co.*, 828 F.3d 1214, 1216 (10th Cir. 2016) (affirming

---

[16] ECF No. 101, p. 6 at ¶ 13.
[17] The Court has stricken Mr. McDuffie's Declaration. Even if the Court were to consider this Declaration, it would still fail to support Mr. Wolff's prima facie case.

summary judgment based on lack of causal connection where employer decided not to hire plaintiff before he asserted his ADA rights) (citing *Sabourin v. University of Utah*, 676 F.3d 950 (10th Cir. 2012)).

**The June 26, 2016 and other "complaints."** Mr. Wolff also argues his June 16, 2017 complaint was a culmination of his many sex discrimination complaints made in the preceding 12 months. But, United contends, Mr. Wolff's evidence does not support that he made complaints of sex discrimination or that Mr. David was aware of such complaints. The Court mainly agrees.

The July 26, 2016 complaint states the "primary issue" was "retaliation." (ECF No. 102-27, p. 3.) In that complaint, Mr. Wolff raised a litany of matters, including: there was "unfair treatment among Customer Service Supervisors"; "[n]ot all supervisors are held to the same standards of attendance policy"; "questionable relationship between a certain CS Supervisor… and Area Manage Huster in which preferential treatment is being given"; "[b]eing talked down to…due to liking one Political Party"; "[b]eing called names because of being bald, along with being made fun of because of my height." (ECF No. 102-27, p. 3.) Mr. Wolf contends the "questionable relationship"[18] he raised constituted a complaint of sex discrimination. But, "[f]avoritism of a paramour is not gender discrimination," *Clark v. Cache Valley Elec. Co.*, 573 F. App'x 693, 697 (10th Cir. 2014) (citing *Taken v. Okla. Corp. Comm'n*, 125 F3d 1366, 1370 (10th Cir. 1997)), and therefore Mr. Wolff lacked a reasonable, good faith belief that he engaged in protected opposition to discrimination, *id.* at 698. *See also Parker v. Salazar*, 431 F. App'x 697, 698 (10th Cir. 2011) ("the alleged sex discrimination he had reported must have been gender-related, not related to sexual affiliations").

Mr. Wolff's evidence of other alleged general sex discrimination complaints – and that

---

[18] Which Mr. Wolff called "an amorous extramarital relationship." (ECF No. 101, p. 10 at ¶ 24.)

United allegedly knew of them – fares no better. For example, Mr. Wolff refers the Court to his deposition transcript but one of the pages was not provided; thus the Court is left with a conclusory statement that Mr. Wolff complained "every other day" to "management" at United that he was treated less favorably than women. (ECF No. 87-5, 157:18-22.) *See Thomas v. U.S. Bureau of Prisons*, 282 F. App'x 701, 704 (10th Cir. 2008) ("conclusory and self-serving statements, even if presented in an affidavit, are insufficient to create a genuine issue of fact to survive summary judgment") (citing *BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1101 (10th Cir. 1999)). Moreover, although "[p]rotected opposition can range from filing informal charges to voicing informal complaints," *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004), Mr. Wolff fails to identify sufficient evidence to suggest that United interpreted any of such generalized comments as protected opposition to sex discrimination.

Similarly, Mr. Ronan testified that he heard at staff meetings that Mr. Wolff complained "he was treated differently than someone else." (ECF No. 102-5, 21:22-25 to 22:1.) But, being treated differently than someone else – even if a woman – is insufficient to show this was a complaint of sex discrimination or that United was aware of any complaint of sex discrimination, especially where Mr. Wolff was complaining of sexual *affiliations*. And, Mr. Eget's knowledge of Mr. Wolff's July 26, 2016 complaint is of no moment where it did not complain of sex discrimination.

Finally, Mr. Wolff further testified that he complained in 2016 about females who were consistently late to work and were treated differently.[19] Such complaints were made to several people, including Messrs. Huster, Ronan, and Eget and Ms. Mitchell, but not to Mr. David.

---

[19] It is unclear to the Court whether this is a part of the generalized complaints previously discussed. Thus, the Court will consider this separately.

(ECF No. 102-1, 23:23-25 to 24:1-5.) Construing the evidence in a light most favorable to Mr. Wolff, this is sufficient to create a triable issue of fact as to whether he engaged in opposition to protected activity. But, that is insufficient to establish a prima facie case.

First, complaints allegedly made in 2016 are too remote in time to establish a causal connection for suspension and termination in June 2017. Second, even assuming any of the above complaints constituted protected activity, Mr. Wolff "must come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008). Mr. Wolff argues that Mr. David's belief that Mr. Wolff indicated during the June 14, 2017 suspension meeting he was being "treated unfairly" is sufficient but the Court finds otherwise. Such knowledge, acquired after Mr. Wolff had been suspended, does not equate to knowledge of sex discrimination. And, by then the decision had already been made to terminate Mr. Wolff, as confirmed by the email sent the date of his suspension. Even construing the facts in a light most favorable to Mr. Wolff, a reasonable jury could not conclude that, at the time he decided to fire Mr. Wolff, Mr. David knew Mr. Wolff had complained of sex discrimination. *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007) ("Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee because of the protected conduct." (citations omitted)). Accordingly, summary judgment is also granted in favor of United on this claim.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

(1) That Defendant's Motion to Strike (ECF No. 112) is GRANTED as stated herein;

(2) That Defendant's Motion for Summary Judgment is DENIED in part as MOOT and

GRANTED in part as follows:

(i)     That Defendant's motion as to the following state law claims is DENIED AS
        MOOT: breach of implied contract; quasi-contract; promissory estoppel based
        on alleged promises of no retaliation; false representation; and negligent
        misrepresentation;

(ii)    That Defendant's motion as to Plaintiff's claim for promissory estoppel based
        on promise of an internal appeal is GRANTED; and

(iii)   That Defendant's motion as to Plaintiff's claims for sex discrimination and
        retaliation is GRANTED;

(3) That Defendant's Motion to Take Trial Preservation Deposition (ECF No. 137) is
    DENIED AS MOOT;

(4) That the trial preparation conference and jury trial are hereby VACATED;

(5) That Defendant is awarded costs and shall within 14 days of the date of this Order file
    a bill of costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and
    D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court; and

(6) That the Clerk shall enter JUDGMENT in favor of Defendant and against Plaintiff
    based on the Order on Defendant's Motion to Dismiss (ECF No. 138) and this Order
    and shall thereafter close this case.

DATED this 9th day of March, 2020.

                                    BY THE COURT:

                                    _____
                                    RAYMOND P. MOORE
                                    United States District Judge